**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division**

|  |  |  |
|---|---|---|
| NEAR EAST MEDIA, a Virginia nonstock corporation | ) ) ) | |
| Plaintiff, | ) ) | CIVIL ACTION NO: |
| v. | ) ) ) | COMPLAINT |
| JOSEPH MAGEN, an Individual, | ) ) | FOR INJUNCTIVE AND DECLARATORY RELIEF |
| ISRATRADE (ASIA) PTE. LTD., a Singapore company, and ISRATRADE INVESTMENTS AND MANAGEMENT LTD., an Israel company | ) ) ) ) | |
| Defendants. | ) ) ) | |
| _____ | ) | |

Plaintiff, Near East Media, by and through counsel of record, files the following Complaint against defendants Joseph Magen, Isratrade (Asia) Pte. Ltd., and Isratrade Investments and Management Ltd. (collectively, "Defendants"), and in support thereof states as follows:

**NATURE OF THE ACTION**

1.    ALL ISRAEL and ALL ARAB are trademarks established by Near East Media ("NEM Word Marks") through widespread and persistent use in commerce in the United States and across the globe at <allisrael.com> and <allarab.news>, on social media on platforms such as Instagram, YouTube, X, and Facebook, in printed publications and in published brochures for annual conferences ("NEM Media Channels").  Near East Media has established the NEM Word Marks in association with news, journalism, commentary, and faith-based communications about politics, spirituality, religion, social issues, cultural issues, and entertainment concerning Israel and other parts of the Middle East.

1

2. Near East Media has further established the following stylized marks ("NEM Stylized Marks") delivered through the NEM Media Channels:





3. Defendants have wrongly and falsely claimed ownership of the NEM Word Marks and NEM Stylized Marks ("NEM Marks"), as well as the NEM Media Channels.

4. Despite demands that Defendants relinquish control of the domain <allisrael.com> ("NEM Domain") and disclaim ownership of NEM Word Marks and NEM Stylized Marks, Defendants have wrongfully and unlawfully held NEM's Marks and the NEM Domain and are demanding payment for their return.

5. To falsely advance claims of ownership, Defendants filed applications with the United States Patent & Trademark Office falsely and unlawfully claiming use and ownership of ALL ISRAEL and the stylized A ⬏ by falsely claiming Defendants' use is established by reference to NEM Media Channels, and not any use by Defendants.

6. The present suit seeks the return of NEM Marks and NEM Domain, as well as compensation for damages caused by Defendants' refusal to return NEM assets. NEM seeks an order (1) compelling the transfer of all title and control over the NEM Domain to NEM, (2) prohibiting Defendants from using the NEM Marks or NEM Domain, (3) cancelling all

trademark registrations and applications filed by Defendants claiming ownership of NEM Marks, and (4) confirming that NEM is the rightful and lawful owner of the NEM Word Marks, NEM Stylized Marks, and NEM Domain.  Plaintiff also seeks damages, attorney fees, costs, and interest associated with Defendants' fraud, conversion, and unjust enrichment.

## PARTIES

7.      Near East Media is a nonstock corporation organized under the laws of the Commonwealth of Virginia with an address of P.O. Box 62172, Virginia Beach, Virginia 23466.

8.      On information and belief, Joseph Magen is an individual with citizenship in the United States with a residence in the Commonwealth of Virginia.

9.      On information and belief, ISRATRADE (ASIA) PTE. LTD. ("Isratrade PTE") is a Singapore company founded by Mr. Magen with the reported address of 151 Stevens Road, Suite Number 07-05, Singapore, 257872.

10.      On information and belief, ISRATRADE INVESTMENTS & MANAGEMENT LTD. ("Isratrade Investments") is an Israeli company founded by Mr. Magen with the reported address of 105 HaRimon Street, Shoresh, Israel 908600.

## JURISDICTION AND VENUE

11.      This action arises under the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202, and the trademark laws of the United States, 15 U.S.C. § 1051 et seq.

12.      This Court has jurisdiction over the subject matter of this action pursuant to 15 U.S.C. §§ 1121 and 1125(d), and 28 U.S.C. §§ 1331, 1338, 2201 and 2202, and pursuant to the principles of supplemental jurisdiction under 28 U.S.C. § 1367.

13.      Personal jurisdiction over Defendants is proper in this District because of their presence in this state, their contractual relationships with Plaintiff in this District as alleged, and their having availed themselves of the rights and benefits of the laws of Virginia.  Defendants have

engaged in conduct relating to their business using the NEM Word Marks and NEM Stylized Marks in Virginia. Defendants have had systematic and continuous business contacts with Virginia.

14.     Venue is proper in this district under 28 U.S.C. § 1391 because Defendant Magen resides in this district, and Defendants are subject to personal jurisdiction in this judicial district because they have directed their business and improper activities at this judicial district.

<u>**PLAINTIFF'S FOUNDATION AND GROWTH**</u>

15.     Founded in 2014, Near East Media ("Plaintiff" or "NEM") is a faith-based nonprofit corporation organized for religious, educational, and charitable purposes including the provision of news, journalism, commentary, and faith-based communications about politics, spirituality, religion, social issues, cultural issues, and entertainment concerning Israel and other parts of the Middle East.

16.     Plaintiff was originally founded by Joseph Magen and Lee Mitchell in 2014 as "Kehila Ministries International," and has been recognized by the IRS as a 501(c)(3) tax-exempt organization.  *See* **Exhibit 1**.

17.     Mr. Magen never owned or controlled Plaintiff; Virginia nonstock (i.e., nonprofit) corporations like NEM have no owners and are controlled by their boards of directors.

18.     Kehila stands for "community" or "congregation" in Hebrew.

19.     Plaintiff originally operated <kehila.org>, an inter-congregational bulletin board for the Messianic community in Israel.

<u>**ALL ISRAEL EMERGES AS PLAINTIFF'S MARK**</u>

20.     On December 18, 2016, Plaintiff, through Mr. Magen, acquired the NEM Domain <allisrael.com> from Uniregistry for $2657.50.  Acting on behalf of Plaintiff, Mr. Magen acquired the NEM Domain using his email, joseph@istratrade.co.il.



21.    Mr. Magen registered the NEM Domain on behalf of and for the exclusive benefit of Plaintiff.

22.    Since purchase, the NEM Domain <allisrael.com> has been hosted and maintained by the domain registrar GoDaddy using an account in Mr. Magen's name, but paid for by Plaintiff, and has been Plaintiff's property used by Plaintiff since acquisition.

23.    Accordingly, on information and belief, Mr. Magen is the registrant of the domain <allisrael.com>.

24.    In 2017, Plaintiff outlined a plan to launch an online and easily searchable directory of content "to be re-branded as allisrael.com."



25.    In May of 2017, Plaintiff retained Israeli and Singaporean graphic designers to design several logos for allisrael.com.

26.    In January of 2018, Plaintiff resolved to adopt the following NEM Stylized Marks for its operations:





27.     On May 25-26, 2018, Plaintiff hosted the first All Israel Conference in Singapore and the NEM Stylized Marks were utilized for the first time.



See **Exhibit 2**.

28.     On July 25, 2018, Plaintiff launched its YouTube Channel at https://www.youtube.com/@allisrael.  From July of 2018 through the present, Plaintiff has posted over 4100 videos to its YouTube Channel using the NEM Stylized Marks:



29.     Plaintiff hosted a second All Israel Conference in Singapore on August 2-3, 2019, using the NEM Stylized Marks:

30.    The brochure for the 2018 conference stated: "You may give online at kehilanews.com/support-israel or by bank wire transfer.  Isratrade (Asia) Pte Ltd is the operations/marketing company for KehilaNews.com, a non-profit organization." *See* **Exhibit 2**.

31.    Reports from these conferences were published at <kehila.org> on June 19, 2018, and August 21, 2019.  *See* **Exhibit 3**. These reports confirm that Mr. Magen was present at the conferences in his capacity as Plaintiff's founder.  In fact, the reports included links to donate directly to Plaintiff and an invitation to host future "All Israel Conferences" through Plaintiff. *See id.*

32.    In September of 2019, Plaintiff produced an overview of its future vision for <kehila.org> and the NEM Domain <allisrael.com>, which included the following history:

33.    Plaintiff's vision, as articulated by Mr. Magen to ministry partners and donors, included the use of the "ALL ISRAEL" brand and the NEM Domain <allisrael.com> as a bridge to allow Plaintiff to raise awareness of Messianic Christian believers in Israel in addition to being a trusted source of news and to educate the Christian world about Israel and biblical truths.

**Mission**

The Israeli believers in Yeshua (Jesus), commonly referred to as the "Messianic community," are estimated at 20,000 to 30,000 believers or 0.2-0.3% of all Israel. Allisrael.com serves as a **bridge** between the small, but growing, Israeli Messianic community and millions of Christians around the world. Unfortunately, only a small fraction of Christians are aware of the believers in Israel. Allisrael.com is here to change this!

The mission of All Israel is two-fold and corresponds to the English and Hebrew websites:

| | |
|---|---|
| **Allisrael.com** | • to be a **trusted source of news** and information from Israel<br>• to **report what God is doing in Israel today**<br>• to **educate** the Christian world about **Israel and Biblical truths**<br>• to **connect Christians in the nations** with the Israeli Messianic community |
| **Allisrael.co.il** | • to **expand the influence of the Messianic community** in Hebrew among Israelis<br>• to **proclaim the Gospel and Biblical truths** in Hebrew among Israelis |

## PLAINTIFF LAUNCHES ALL ISRAEL NEWS AND ALL ARAB NEWS

34.    In 2019, Mr. Magen, on behalf of Plaintiff, asked Joel Rosenberg, a bestselling author and Middle East analyst, to step in with his team to help launch ALL ISRAEL NEWS and ALL ARAB NEWS, which they did.

35.    Mr. Magen encouraged some of Plaintiff's board members to step down to make room for new board members who supported his and Mr. Rosenberg's vision for ALL ISRAEL NEWS and ALL ARAB NEWS.

36.    On May 3, 2019, Plaintiff moved Kehila News to <kehilanews.allisrael.com>, which is owned by Plaintiff.

37.    In March of 2020, Plaintiff issued "All Israel News Proposal for Partnership," which describes a nonprofit media platform with opportunities to purchase advertising.  *See*

9

**Exhibit 4**. Mr. Rosenberg and Mr. Magen are presented as founders with Mr. Rosenberg listed as the Editor-in-Chief. "All Arab News" was also introduced.

38. In July 2020, Plaintiff began doing business as "All Israel Media" and "Near East Media."

39. On August 25, 2020, Plaintiff posted a video to the All Israel YouTube Channel announcing All Israel News and All Arab News with a launch date of September 1, 2020. The video, which has over 1 million views, is located at https://www.youtube.com/watch?v=8Zt-LuKHKuE.

40. The August 25, 2020 video begins by featuring NEM's Stylized Marks in the upper right, upper left, and lower right hand corners:



41. In the video, Mr. Rosenberg, speaking on behalf of Plaintiff, explains that Plaintiff is launching two new websites to provide news, commentary, and reporting in order to better educate and report on the events occurring in the region:



42.     Since at least August of 2020, Plaintiff has delivered its services at the NEM Domain <allisrael.com> and <allarab.news> using the NEM Marks in association with religious, educational, instructional, news, journalism, commentary, and faith-based communications regarding politics, spirituality, religion, social issues, cultural issues, and entertainment.

43.     Since at least August of 2020, videos posted on the All Israel YouTube Channel are produced by Plaintiff and marked with the NEM Stylized Marks.

44.     Plaintiff has also continuously maintained social media displaying the NEM Marks in association with its goods and services, as follows:

   a.  YouTube at https://www.youtube.com/@allisrael with over 408,000 subscribers;

   b.  Facebook at https://www.facebook.com/allisraelnewscom/ with over 115,000 followers;

   c.  Twitter or X at https://x.com/all_israel_news with over 167,000 followers;

   d.  Telegram at https://t.me/allisrael with over 8,000 followers; and

11

e. Instagram at https://www.instagram.com/allisraelnews/ with over 10,000 followers.

45. Plaintiff officially changed its named from Kehila Ministries International to Near East Media in June 2023.

46. On information and belief, Defendants have not used the NEM Word Marks or NEM Stylized Marks in association with their goods and services in the United States prior to March 21, 2026.

## NEM CONTRACTS WITH MR. MAGEN AND ISRATRADE INVESTMENTS

47. On September 1, 2020, Defendant Isratrade Investments entered into an independent contractor agreement with Near East Media ("2020 IC Agreement").  *See* **Exhibit 5**.

48. Pursuant to Section 1 of the 2020 IC Agreement, Isratrade Investments agreed to provide operational and management services to NEM for the news websites owned by NEM known as "All Israel News" and "All Arab News."

49. Plaintiff owned "All Israel News" and "All Arab News" and all associated intellectual property and media assets such as the corresponding domains, YouTube Channel, and social media, otherwise known as the NEM Media Channels.

50. The purpose of the 2020 IC Agreement was to contract with Mr. Magen and Isratrade Investments to provide management services to manage the NEM Media Channels at the direction of the CEO and the Editor-in-Chief.

51. According to Section 1.2 of the 2020 IC Agreement, Mr. Magen was the "Founder & CEO" of Isratrade Investments and would be the COO and Managing Editor of All Israel News and All Arab News.  As the COO, Mr. Magen and Isratrade Investments reported to the CEO of NEM, Mr. Rosenberg.

12

52.    As COO, Mr. Magen and Isratrade Investments had responsibility for managing the day to day affairs of NEM as detailed in Section 1.3 of the 2020 IC Agreement including being responsible for:

   a.   All advertising sales and managing advertiser relations;

   b.   All donor development and donor relations;

   c.   All website development, interfacing with web developers and designers, website backups, server matters and all other technology issues; and

   d.   The websites, ensuring high uptime and getting websites fixed if they are down.

53.    As Managing Editor, Mr. Magen and Isratrade Investments were responsible for reporting to the Editor-in-Chief, Mr. Rosenberg, and developing content as detailed in Section 1.4 of the 2020 IC Agreement.

54.    Mr. Magen and Isratrade Investments were paid a monthly fee "as full compensation for services provided."

55.    The 2020 IC Agreement did not result in a transfer of any rights to NEM Word Marks, NEM Stylized Marks, or NEM Media Channels to Defendants.

56.    Rather, the 2020 IC Agreement was premised on the fact that the NEM Word Marks, NEM Stylized Marks, and NEM Media Channels are owned by NEM and were contracted to Defendants for management, not ownership.  For example, the 2020 IC Agreement indicated Isratrade would "provide operational and management services *to NEM* for the news websites, 'All Israel News' (AIN) and 'All Arab News' (AAN)."  2020 IC Agreement (Ex. 5) § 1.1 (emphasis added).

57.    The 2020 IC Agreement had a term of one year that could be renewed by mutual consent.

58. The 2020 IC Agreement was renewed in 2021.

59. On September 1, 2022, the 2020 IC Agreement was not renewed. Rather, Mr. Magen and NEM entered into an independent contractor agreement ("2022 Full-Time Service Agreement"). *See* **Exhibit 6**.

60. According to Section 1.2 of the 2022 Full-Time Service Agreement, Mr. Magen was appointed the COO and Managing Editor of All Israel News and All Arab News. As the COO, Mr. Magen reported to the CEO of NEM, Mr. Rosenberg.

61. As COO, Mr. Magen had responsibility for managing the day to day affairs of NEM as detailed in Section 1.3 of the 2022 Full-Time Service Agreement, including being responsible for

    a. All advertising sales and managing advertiser relations,

    b. All donor development and donor relations,

    c. All website development, interfacing with web developers and designers, website backups, server matters and all other technology issues and

    d. The websites, ensuring high uptime and getting websites fixed if they are down.

62. As Managing Editor, Mr. Magen was responsible for reporting to the Editor-in-Chief, Mr. Rosenberg, and developing content as detailed in Section 1.4 of the 2022 Full-Time Service Agreement.

63. Mr. Magen was paid in full for his services as detailed in Section 2 of the 2022 Full-Time Service Agreement.

64. The 2022 Full-Time Service Agreement did not result in a transfer of any rights to NEM Word Marks, NEM Stylized Marks, or NEM Domain to Defendants.

14

65. Rather, the 2022 Full-Time Service Agreement was premised on the fact that the NEM Word Marks, NEM Stylized Marks, and NEM Domain are owned by NEM and were contracted to Defendants for management, not ownership. For example, the 2022 Full-Time Service Agreement indicated Mr. Magen would "provide operational and management services *to NEM* for the news websites, 'All Israel News' (AIN) and 'All Arab News' (AAN)." 2022 Full-Time Service Agreement (Ex. 6) § 1.1 (emphasis added).

66. The 2022 Full-Time Service Agreement had a term of one year that could be renewed by mutual consent.

67. The 2022 Full-Time Service Agreement was renewed in 2023 and again in 2024.

68. In or before February of 2025, Mr. Magen expressed dissatisfaction with the leadership direction and vision of Mr. Rosenberg and the Plaintiff's Board of Directors.

## DEFENDANTS' FRAUD ON THE TRADEMARK OFFICE

69. On information and belief, on February 19, 2025, Mr. Magen, while still under contract with NEM, secretly caused the filing of U.S. Trademark Application No. 99047486 under Section 1(a) of the Trademark Act for the mark ALL ISRAEL for use with "Providing information, news, and commentary in the field of current events via the Internet; Entertainment services, namely, providing webcasts in the field of current events, politics, spirituality, religion, social issues, and cultural issues; Video production; Production and distribution of videos in the field of current events, politics, spirituality, religion, social issues, and cultural issues; Providing on-line non-downloadable articles in the field of current events, politics, spirituality, religion, social issues, and cultural issues; Providing religious instruction; Providing religious instruction by means of online non-downloadable videos" in Class 41 (the "ALL ISRAEL Application"). *See* **Exhibit 7**.

70. Isratrade PTE is wrongly listed as the owner of the ALL ISRAEL Application.

15

71. In connection with the ALL ISRAEL Application, Defendants included a screenshot of Plaintiff's All Israel News YouTube Channel, https://www.youtube.com/@allisrael, to support a false claim that Defendants have used the mark ALL ISRAEL.



*Specimen submitted with U.S. Trademark Application No. 99047486*

72. As part of the ALL ISRAEL Application, Mr. Magen, on behalf of Defendants, attested that "To the best of the signatory's knowledge and belief, no other persons, except, if applicable, concurrent users, have the right to use the mark in commerce, either in the identical form or in such near resemblance as to be likely, when used on or in connection with the goods/services of such other persons, to cause confusion or mistake, or to deceive."

73. On information and belief, Defendants knew, at the time they filed the ALL ISRAEL Application, that their statements of ownership and use of "ALL ISRAEL" detailed in Application No. 99047486 were expressly false.

74.     On information and belief, on February 19, 2025, Mr. Magen, while still under contract with NEM, secretly filed U.S. Trademark Application No. 99047543 under Section 1(a) of the Trademark Act for the design mark: ⋀ for use with "Providing information, news, and commentary in the field of current events via the Internet; Entertainment services, namely, providing webcasts in the field of current events, politics, spirituality, religion, social issues, and cultural issues; Video production; Production and distribution of videos in the field of current events, politics, spirituality, religion, social issues, and cultural issues; Providing on-line non-downloadable articles in the field of current events, politics, spirituality, religion, social issues, and cultural issues; Providing religious instruction; Providing religious instruction by means of online non-downloadable videos," in Class 41 (the "A Design Application"). *See* **Exhibit 8**.

75.     Isratrade PTE is wrongly listed as the owner of the A Design Application.

76.     In connection with the A Design Application, Mr. Magen included a screenshot of Plaintiff's All Israel News YouTube Channel, https://www.youtube.com/@allisrael, to falsely support Defendants' claimed use of the A Design Mark.



*Specimen submitted with U.S. Trademark Application No. 99047543*

77.    As part of the A Design Application, Mr. Magen, on behalf of Defendants, attested that "To the best of the signatory's knowledge and belief, no other persons, except, if applicable, concurrent users, have the right to use the mark in commerce, either in the identical form or in such near resemblance as to be likely, when used on or in connection with the goods/services of such other persons, to cause confusion or mistake, or to deceive."

78.    On information and belief, Defendants knew, at the time they filed the A Design Application, that their statements of ownership and use of the A Design Mark detailed in Application No. 99047543 were expressly false.

79.    On information and belief, Mr. Magen filed the above applications with the intent to deceive the United States Patent and Trademark Office and with full knowledge of Plaintiff's prior and continued use and rights in the applied-for marks.

80. The specimens of use Mr. Magen submitted in support of the above applications do not belong to Mr. Magen, Isratrade Investments, or Isratrade PTE. Instead, all such specimens and the evidence of purported use belong to Plaintiff.

81. On information and belief, Defendant Mr. Magen has personally and actively directed the activities of Defendants to commit the above wrongful acts.

82. Defendants did not seek, nor did they have, permission or authorization from Plaintiff to use the NEM Marks or the NEM Media Channels to file and support the above cited applications.

83. On October 14, 2025, on the basis of false information, Defendants were issued U.S. Trademark Registration No. 7985513 for the A Design Application.

## MR. MAGEN TERMINATES NEM CONTRACT AND DEMANDS LICENSING FEE

84. On April 1, 2025, Mr. Magen provided written notice to Plaintiff that the 2022 Full-Time Service Agreement would be terminated effective April 30, 2025. *See* **Exhibit 9**.

85. In the termination notice, Mr. Magen claimed that Isratrade Investments owned the NEM Word Marks, NEM Stylized Marks, and NEM Media Channels, stating: "Effective May 1, 2025, Near East Media will be required to pay a licensing fee to Isratrade Investments and Management Ltd for the continued use of the 'All Israel' branding and logo."

86. On September 5, 2025, Mr. Magen provided a final invoice from Isratrade Investments to NEM, listing NEM's Virginia Beach address. *See* **Exhibit 10**.

87. The invoice included a charge for services provided in April 2025 under the 2022 Full-Time Service Agreement, which NEM paid.

88. Following termination, Plaintiff has not paid a "licensing fee" to Defendants and instead has demanded that Defendants provide access to and control over the NEM Marks, NEM Media Channels, and NEM Domain.

89. In April 2026, Mr. Magen agreed to transfer ownership of the @allisrael YouTube channel and NEM Media Channels to Plaintiff.

90. Defendants have refused to provide Plaintiff with control over the NEM Marks and NEM Domain.

91. Because Defendants misappropriated and refused to provide Plaintiff with control over the NEM Domain, <allisrael.com>, Plaintiff had to move its content to an alternative domain, <allisraelnews.com>.

92. Defendants agreed to implement a redirect from the NEM Domain <allisrael.com> to <allisraelnews.com>, meaning web traffic to <allisrael.com> would automatically be redirected to <allisraelnews.com> as the parties worked to resolve the dispute over ownership of the NEM Marks and NEM Domain.

## INFRINGING USE OF NEM DOMAIN <ALLISRAEL.COM>

93. On March 11, 2026, counsel for NEM provided Mr. Magen with a draft copy of this Complaint. *See* **Exhibit 11**. At that time, the redirect for the NEM Domain was in place and Defendants had not used the NEM Marks anywhere in the world.

94. On March 19, 2026, Mr. Magen acknowledged receipt of the draft Complaint. *See* **Exhibit 12**.

95. On or around March 21, 2026, on information and belief, Defendants disrupted the redirect from the NEM Domain <allisrael.com> to Plaintiff's alternative domain, <allisraelnews.com>, for the purposes of launching Defendants' own website.

96. As a result, all traffic to the NEM Domain <allisrael.com> has been misappropriated.

97. As of approximately 4:30 am ET on March 21, 2026, the NEM Domain <allisrael.com> used NEM's Marks, as shown towards the top of the page below:

20



*See* **Exhibit 13**.

98.     As of approximately 11:30 am ET on March 21, 2026, the NEM Domain <allisrael.com> used NEM's Marks in a different orientation on the mobile version of the site, as shown below:



*See* **Exhibit 14**.



*See* **Exhibit 15**.

99.   As of approximately 4 pm ET on March 24, 2026, the NEM Domain <allisrael.com> displayed the title "Allisrael.com Platform" and aggregated videos from 15 YouTube channels.  *See* **Exhibit 16**.  Those 15 channels include the All Israel YouTube Channel, but also include YouTube channels that are not affiliated with Plaintiff.  *See* **Exhibit 17**.

100.   As of approximately 4 pm ET on March 24, 2026, certain pages on the NEM Domain <allisrael.com> continued to use NEM's A Design Mark, as shown on the top of this page:



**Exhibit 17**; *see also* **Exhibit 18**.

101.    On information and belief, Defendants knowingly and willfully misappropriated Plaintiff's NEM Domain for the purpose of launching their own website.

102.    In the week following Defendants' disruption of the redirect from the NEM Domain <allisrael.com> to <allisraelnews.com>, the number of daily visitors to <allisraelnews.com> (Plaintiff's alternative domain created in response to Defendants' refusal to relinquish control of allisrael.com) dropped by more than 50%, from around 20,000 to below 10,000.



*See* **Exhibit 19**.

103.    On or around May 18, 2026, Defendants again altered the content on the NEM Domain <allisrael.com>, changing it to a display a manual click-through redirect link to <allisraelnews.com>, as shown below:



25

104.    At no point relevant to this dispute have Defendants transferred ownership of the NEM Domain to Plaintiff, and to date, Defendants have not transferred ownership of the NEM Domain to Plaintiff.

## COUNT I
### Trademark Cyberpiracy Under 15 U.S.C. § 1125(d)
### (Against All Defendants)

105.    Plaintiff repeats and realleges all preceding paragraphs as if fully set forth herein.

106.    Mr. Magen registered the NEM Domain <allisrael.com> on behalf of and for the exclusive benefit of Plaintiff.

107.    Mr. Magen expressly knows that the domain <allisrael.com> is Plaintiff's property.

108.    Plaintiff, not Defendants, has been using the ALL ISRAEL Mark and the domain <allisrael.com> to offer its goods and services and has a protectable interest in the same.

109.    Despite registering the NEM domain <allisrael.com> on behalf of Plaintiff, Mr. Magen has never transferred the domain to Plaintiff, and has instead withheld Plaintiff's property from Plaintiff.

110.    The withholding of the NEM Domain <allisrael.com> from Plaintiff, and control over all associated assets such as email and cloud storage, expropriates the ALL ISRAEL mark, which was distinctive at the time the domain name was registered, re-registered, updated, and/or used.

111.    The withholding of the NEM Domain <allisrael.com> from Plaintiff is in bad faith to profit from the mark.  In view of Mr. Magen's time working for Plaintiff, Mr. Magen was well aware of Plaintiff's rights in the NEM Marks, including ALL ISRAEL, and NEM Domain, and knew he did not have protectable rights in the same.  Mr. Magen even submitted evidence of Plaintiff's use to support his fraudulent attestation of a first use date in his trademark applications to the USPTO.

112. By engaging in the activities described above, Mr. Magen has engaged in cyberpiracy in violation of 15 U.S.C. § 1125(d).

113. Accordingly, Plaintiff is entitled to the transfer of the <allisrael.com> domain name.

## COUNT II
### Unfair Competition Under 15 U.S.C. § 1125(a)(1)(A) and (B)
### (Against All Defendants)

114. Plaintiff repeats and realleges all preceding paragraphs as if fully set forth herein.

115. 15 U.S.C. § 1125(a)(1)(A) prohibits the use of any word, term, name, symbol, device, or any combination thereof (regardless of whether it has been registered with the USPTO), or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact that (A) is likely to cause confusion, or to cause mistake, or to deceive as to affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities of another person, or (B) is used in commercial advertising or promotion that misrepresent the nature, qualities of the goods, services, or commercial activities.

116. Plaintiff operates the NEM Media Channels and offers its goods and services using the NEM Marks for religious, educational, and charitable purposes, including but not limited to the provision of news, journalism, commentary, and faith-based communications about politics, spirituality, religion, social issues, cultural issues, and entertainment concerning Israel and other parts of the Middle East.

117. Defendants do not have the right, authority, or permission to use Plaintiff's name, marks, or symbols, including the NEM Marks, in connection with offering any of Defendants' goods or services, including but not limited to use with "[p]roviding information, news, and commentary in the field of current events via the Internet; Entertainment services, namely,

27

providing webcasts in the field of current events, politics, spirituality, religion, social issues, and cultural issues; Video production; Production and distribution of videos in the field of current events, politics, spirituality, religion, social issues, and cultural issues; Providing on-line non-downloadable articles in the field of current events, politics, spirituality, religion, social issues, and cultural issues; Providing religious instruction; Providing religious instruction by means of online non-downloadable videos."

118.   Defendants' use of the NEM Marks in connection with the "[p]roviding information, news, and commentary in the field of current events via the Internet; Entertainment services, namely, providing webcasts in the field of current events, politics, spirituality, religion, social issues, and cultural issues; Video production; Production and distribution of videos in the field of current events, politics, spirituality, religion, social issues, and cultural issues; Providing on-line non-downloadable articles in the field of current events, politics, spirituality, religion, social issues, and cultural issues; Providing religious instruction; Providing religious instruction by means of online non-downloadable videos" is likely to cause confusion, cause mistake and deceive as to Defendants' affiliation, connection and association with Plaintiff, and is likely to cause confusion regarding Plaintiff's sponsorship or approval of Defendants' products and services.

119.   Defendants' claimed ownership of the NEM Marks, and asserted use of the NEM Domain, along with its false or misleading descriptions and representations, are a violation of 15 U.S.C. § 1125(a)(1)(A).

120.   Defendants' claimed ownership of the NEM Marks and asserted use of the NEM Domain constitutes false and/or misleading representations of fact.  Defendants' aforementioned actions and activities have been committed willfully with the intent to disregard Plaintiff and

Plaintiff's rights in the NEM Marks, and to divert business from Plaintiff and have caused and will continue to cause damage to Plaintiff until such time as it is permanently enjoined by this Court.

## COUNT III
### Declaratory Judgment
### (Against All Defendants)

121.    Plaintiff repeats and realleges all preceding paragraphs as if fully set forth herein.

122.    As a result of the acts described in the preceding paragraphs, there exists a controversy of sufficient immediacy and reality to warrant the issuance of a declaratory judgment that Plaintiff has ownership of the NEM Marks and the NEM Domain.

123.    A judicial declaration is necessary and appropriate so that Plaintiff may ascertain its ownership and right to continue using Plaintiff's NEM Marks and the NEM Domain in the manner set out in this Complaint.

124.    Plaintiff is entitled to a declaratory judgment (1) that Plaintiff is the rightful and lawful owner of the NEM Word Marks and NEM Stylized Marks and the NEM Domain, (2) compelling the transfer of all control over the NEM Domain to NEM, and (3) cancelling all trademark registrations and applications filed by Defendants claiming ownership of NEM Marks.

## COUNT IV
### Conversion
### (Against All Defendants)

125.    Plaintiff repeats and realleges all preceding paragraphs as if fully set forth herein.

126.    As part of his work for Plaintiff, Mr. Magen registered the domain <allisrael.com> for the use and benefit of Plaintiff.

127.    Accordingly, Plaintiff has exclusive ownership of the NEM Domain <allisrael.com>.

128.    Plaintiff has a right to immediate possession of the NEM Domain.

29

129.   Mr. Magen has wrongfully exercised authority over Plaintiff's property by maintaining the registration for the domain <allisrael.com> to the exclusion of Plaintiff.

130.   Mr. Magen has deprived Plaintiff of possession of its property by refusing to transfer the domain registration to Plaintiff.

**COUNT V**
**Unjust Enrichment**
**(Against All Defendants)**

131.   Plaintiff repeats and realleges all preceding paragraphs as if fully set forth herein.

132.   Defendants' unauthorized use and registration of the NEM Marks and the NEM Domain thereby provided Defendants the unauthorized benefit of Plaintiff's goodwill, reputation, and commercial recognition.

133.   Defendants have tried to capitalize on the goodwill, reputation, and commercial recognition of Plaintiff's NEM Marks and the NEM Domain by registering the A Design Mark and retaining the registration for the domain <allisrael.com>, showing Defendants' knowledge of the benefits Defendant improperly obtains from Plaintiff, for which Defendants reasonably should have expected to repay Plaintiff.

134.   Defendants' retention of these benefits without Plaintiff's authorization or consent or without paying for its value is inequitable.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff Near East Media respectfully requests that the Court enter judgment in Near East Media's favor and against Defendants Joseph Magen, Isratrade (Asia) Pte. Ltd., and Isratrade Investments and Management Ltd., and award the following relief:

A.   That the Court issue an order enjoining Defendants:

   i.   from claiming ownership of the NEM Marks and NEM Domain;

   ii.   from using the NEM Marks and NEM Domain; and

30

iii. specifically directing Defendants to assign all rights, ownership, and interest in and control of the NEM Marks and NEM Domain to Plaintiff, including all associated assets such as emails, email extensions, cloud storage locations, credentials, and registries;

B. That the Court issue an order:

i. declaring that NEM is the rightful and lawful owner of the NEM Word Marks and NEM Stylized Marks; and

ii. cancelling all trademark registrations and applications filed by Defendants claiming ownership of NEM Marks.

C. That the Court award Plaintiff Defendants' profits and Plaintiff's compensatory and consequential damages in an amount to be established by a jury trial on all issues so triable, or by trial to the bench if ordered;

D. That the Court award Plaintiff its reasonable attorneys' fees and costs pursuant to 15 U.S.C. § 1117(a) and/or any other statute, regulation, or precedent authorizing the award of attorneys' fees and costs, along with court fees, expert witness fees, and pre- and post-judgment interest on any award of damages to the extent allowed by law; and

E. Such other and further legal or equitable relief as the Court deems just and appropriate.

## JURY DEMAND

A jury trial is requested on all issues triable to a jury.

Filed this 11th day of June, 2026.

31

Respectfully Submitted,

**TAFT STETTINIUS & HOLLISTER LLP**

By: /s/ *Peter C. Biberstein*

Peter C. Biberstein
VSB No. 85162
*Attorney for Plaintiff Near East Media*
Taft Stettinius & Hollister LLP
675 Fifteenth Street, Suite 2300
Denver, CO 80202
Telephone: (303) 297-2900
Fax: (303) 298-0940
pbiberstein@taftlaw.com

32